IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 25-cv-04069-PAB

WILSON RENE GARCIA-PEREZ,

    Petitioner,

v.

ROBERT GUADIAN, Field Office Director of Enforcement and Removal Operations, Denver Field Office, Immigration and Customs Enforcement,
TODD LYONS, Acting Director Immigration and Customs Enforcement,
US IMMIGRATION AND CUSTOMS ENFORCEMENT,
JUAN BALTASAR, Warden of Denver Contract Detention Facility, Aurora, Colorado,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
US DEPARTMENT OF HOMELAND SECURITY,
SIRCE OWEN, Acting Director of the Executive Office for Immigration Review, and
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

    Respondents.

---

# ORDER

---

This matter comes before the Court on petitioner Wilson Rene Garcia-Perez's Petition for Writ of Habeas Corpus [Docket No. 1]. Respondents filed a response. Docket No. 11. Petitioner filed a reply. Docket No. 12.

## I. BACKGROUND

Petitioner is an 18-year-old citizen of Guatemala. Docket No. 1 at 2, 5, ¶¶ 1, 23. On or about August 2, 2021, petitioner arrived in the United States near Sasabe, Arizona where he was detained by the Department of Homeland Security ("DHS").[1] *Id.*

---

[1] In a declaration, DHS Immigration and Customs Enforcement ("ICE") Deportation Officer John Mansur states that, "[o]n August 2, 2021, U.S. Customs and Border Protection (CBP) encountered Petitioner at or near Sasabe, Arizona, shortly after he illegally crossed the border into the United States from Mexico." Docket No. 11-

at 5, ¶ 24.  At the time, petitioner was a 14-year-old unaccompanied minor.  *Id.*; Docket No. 11-1 at 2, ¶ 7.  On August 3, 2021, DHS issued a Notice to Appear indicating that it intended to initiate removal proceedings against petitioner.  Docket No. 1 at 5, ¶ 25.  The Notice was never filed with the immigration court and removal proceedings were not initiated.  *Id.*; Docket No. 11-1 at 2-3, ¶ 8.  On or about August 29, 2021, petitioner was released to the custody of his father.  Docket No. 1 at 5, ¶ 26; Docket No. 11-1 at 3, ¶ 9.

On November 22, 2025, petitioner appeared for an immigration appointment and was detained by DHS.  Docket No. 1 at 5, ¶ 29.  ICE issued a new Notice to Appear to petitioner, initiating removal proceedings under 8 U.S.C. § 1229(a).  *Id.* at 6, ¶ 30; Docket No. 11-1 at 3, ¶ 11.  The Notice charges petitioner with being inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  Docket No. 11-1 at 3, ¶ 11.  Respondents claim that petitioner is being held pursuant to 8 U.S.C. § 1225(b).  *Id.*, ¶ 12.

On December 2, 2025, petitioner requested a custody redetermination hearing before an immigration judge.  Docket No. 1 at 6, ¶ 31.  On December 8, 2025, petitioner appeared for an initial hearing in his removal proceedings where he was granted additional time to retain an attorney.  Docket No. at 11-1 at 3-4, ¶ 15.  On December 11, 2025, petitioner and his counsel appeared before an immigration judge for a custody redetermination hearing.  *Id.* at 4, ¶ 16.  At the hearing, the immigration judge found that the court lacked jurisdiction to redetermine petitioner's custody status.  *Id*.  On

---

1 at 2, ¶ 7.  Mr. Mansur states that "Petitioner illegally entered the United States at an unknown location and date."  *Id.*, ¶ 5.  The Court need not resolve the date on which petitioner entered the country, finding it undisputed that he has been in the United States since at least August 2, 2021.

December 29, 2025, petitioner appeared for a master calendar hearing. *Id.*, ¶ 17. Petitioner is currently detained at the Denver Contract Detention Facility in Aurora, Colorado. Docket No. 1 at 2, ¶ 3.

On December 18, 2025, petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. *See generally id.* Petitioner brings a claim for violation of the Immigration and Nationality Act 8 U.S.C. § 1226 (Count 1) and a claim for violation of the Due Process Clause of the Fifth Amendment of the United States Constitution (Count 2). *Id.* at 7-8. Petitioner asks the Court to issue a writ requiring that respondents release petitioner within one day or, in the alternative, release petitioner unless petitioner is provided a bond hearing pursuant to § 1226(a) within seven days. *Id.* at 8.

## II.   ANALYSIS

The parties disagree on the statutes that control petitioner's detention. Petitioner contends that his detention should be controlled by 8 U.S.C. § 1226 because § 1226 "governs the detention of individuals apprehend[ed] inside the United States and placed in removal proceedings." *Id.* at 6, ¶ 34. Because he believes that § 1226 applies, petitioner argues that respondents must release him or provide him a bond hearing. *See id.* at 7, ¶¶ 40-41. Respondents, however, contend that 8 U.S.C. § 1225(b)(2)(A) applies to petitioner, and petitioner is therefore not entitled to a bond hearing, but is rather subject to mandatory detention. *See* Docket No. 11 at 7-12.

The Immigration and Nationality Act ("INA") "contemplates two detention regimes for noncitizens pending removal proceedings," one controlled by § 1225 and one controlled by § 1226. *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025) (citation omitted). Section 1225 mandates

3

detention pending removal proceedings, providing that, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2)(A).  Unless certain exceptions are present, as provided for in §§ 1225(b)(2)(B) and (C), § 1225 "mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies."  *Hernandez*, 2025 WL 2996643, at *3.  Section 1226, on the other hand, does not mandate detention, providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  Under § 1226(a)(2), the Attorney General has the discretion to release a noncitizen on bond while removal proceedings are pending.  8 U.S.C. § 1226(a)(2).  "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."  *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

Respondents argue that *Jennings* supports the conclusion that § 1225(b) applies to "applicants for admission," which encompasses "*both* those just arriving in the United States *and* those who entered without inspection."  Docket No. 11 at 8.  "[A] proper understanding of the relevant statutes, in light of their plain text, overall structure, and uniform case law interpreting them, compels the conclusion that § 1225's provision for mandatory detention of noncitizens 'seeking admission' does not apply to someone like [petitioner], who has been residing in the United States for more than two years."  *Mendoza Gutierrez v. Baltasar*, No. 25-cv-2720-RMR, 2025 WL 2962908, at *5 (D. Colo. Oct. 17, 2025) (citation omitted) (collecting cases).

The Court disagrees with respondents' contention that *Jennings* supports a different conclusion.  The Supreme Court in *Jennings* held that, "[i]n sum, U.S.

4

immigration law authorizes the Government to detain certain aliens *seeking admission into the country under §§ 1225(b)(1) and (b)(2)*" and that "[i]t also authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under [] § 1226(a)."  *Jennings*, 583 U.S. at 289 (emphasis added).  Therefore, *Jennings* distinguishes between noncitizens seeking admission, who are subject to § 1225, and noncitizens who are already present in the country, who are subject to § 1226.

Respondents points to *Jennings's* finding that § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," arguing that "§ 1225(b)(2) is a catchall that is broader than § 1225(b)(1)."  Docket No. 11 at 9 (quoting *Jennings*, 583 U.S. at 287).  This language from *Jennings* does not stand for the proposition that any "applicant for admission" who falls outside § 1225(b)(1) must necessarily be covered by § 1225(b)(2).  "While it is true that Section 1225(b)(2) is broader than § 1225(b)(1), that does not mean that § 1225(b)(2) applies to *all* other noncitizens in the United States who have not been admitted."  *Hernandez*, 2025 WL 2996643, at *6 (quoting *Mendoza Gutierrez*, 2025 WL 2962908, at *6) (internal quotations omitted).  Furthermore, *Jennings* "did not address exactly which noncitizens are covered by § 1225(b)(2)."  *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *3 (D. Colo. Jan. 6, 2026).  To adopt respondents' interpretation of *Jennings* would be to ignore "the greater context from *Jennings* . . . which makes clear that § 1225(b)(2)'s catchall provision – and, in fact, all provisions of § 1225 – apply to noncitizens seeking admission into the country, as opposed to those who are already in the country."  *Hernandez*, 2025 WL 2996643, at *6 (quoting *Jennings*, 582 U.S. at 289) (internal quotations omitted).

Respondents' argument that § 1225(b)(2)(A) applies to noncitizens already residing in the United States is contrary to the plain language of § 1225. "The weight of authority interpreting § 1225 has recognized that for section 1225(b)(2)(A) to apply, several conditions must be met – in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted.'" *Loa Caballero v. Baltazar,* No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025) (internal quotation and citation omitted) (quoting 8 U.S.C. § 1225(b)(2)(A)). Section 1225(b)(2)(A)'s requirement that an applicant for admission be "seeking admission" "requires that the applicant must be presently and actively seeking lawful entry into the United States." *Id.* Therefore, noncitizens who "have been here for years upon years and never proceeded to obtain any form of citizenship . . . are not 'seeking' admission" as defined in § 1225(b)(2)(A). *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025). While these kinds of noncitizens, like petitioner, "may technically be a noncitizen present in the United States who has not been admitted [making] them an applicant for admission," that does not mean that they are "seeking admission." *See id.* (internal quotations omitted).

Respondents point to § 1225(b)(1)(A)(i) for the proposition that mandatory detention is not limited to noncitizens arriving in the United States. *See* Docket No. 11 at 8. Section 1225(b)(1)(A)(i) provides:

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review.

6

8 U.S.C. § 1225(b)(1)(A)(i).  Respondents argue that § 1225(b)(1)(A)(i)'s reference to § 1225(b)(1)(A)(iii), which in turn references "some noncitizens who have *already* been residing in the United States and are inadmissible," demonstrates that § 1225 is applicable to noncitizens like petitioner.  *See* Docket No. 11 at 8.  However, § 1225(b)(1)(A)(i) and (iii) are "better understood as carve outs for the 'certain other aliens' that do not fall into § 1225's otherwise general application to *arriving* [non]citizens."  *Hernandez*, 2025 WL 2996643, at *6 (citing 8 U.S.C. § 1225(b)(1)).  Respondents also rely on 8 U.S.C. § 1225(a)(3) for the proposition that "§ 1225 elsewhere recognizes that the *status* of being an applicant for admission is one way that a noncitizen may be 'seeking admission.'"  Docket No. 11 at 9-10.  Section 1225(a)(3) states that "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers."  8 U.S.C. § 1225(a)(3).  The Court rejects respondents' argument that an applicant for admission is necessarily seeking admission.  "The 'otherwise seeking admission' language is simply a catch-all provision to describe individuals seeking admission and subject to inspection who may not fit the definition of 'applicant for admission,' such as a person not currently present in the United States."  *Loa Caballero*, 2025 WL 2977650, at *6 n.4.

Respondents argue that § 1226(a)'s "general detention authority, which permits the issuance of warrants to detain noncitizens for their removal proceedings, must be read alongside § 1225, which *specifically* addresses the detention of applicants for admission."  Docket No. 11 at 10.  Respondents contend that § 1226 "does not displace the more specific provisions in § 1225."  *Id.*  As the Court has already found, petitioner is subject to detention under § 1226, and a "noncitizen cannot be subject to both

7

mandatory detention under § 1225 and discretionary detention under § 1226." *See Hernandez,* 2025 WL 2996643, at *6 (citation omitted).

Congress's 2025 amendment of § 1226 to add subsection (c)(1)(E) provides further support that petitioner is subject to § 1226.  As respondents acknowledge, "§ 1226(c)(1)(E) mandates detention for a narrow category of noncitizens who entered the country without inspection."  Docket No. 11 at 10.  In January 2025, Congress amended § 1226, adding § 1226(c)(1)(E).  *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025).  Section 1226(c)(1)(E) provides that the "Attorney General shall take into custody any alien who –"

> (E)(i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and

> (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person,

> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E).  This provision would be meaningless if noncitizens already residing in the United States were all subject to mandatory detention.  *See Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *10 (N.D. Cal. Sept. 12, 2025) ("If Congress amended Section 1226 to create mandatory detention for certain inadmissible noncitizens, it follows that those noncitizens were not already subject to mandatory detention.").

For the foregoing reasons, "federal district courts have overwhelmingly rejected Respondents' broad interpretation of section 1225(b)(2)."  *See Loa Caballero*, 2025 WL 2977650, at *5 (internal quotation and citation omitted) (collecting cases).  The Court

agrees with the weight of the authority finding that petitioner's detention is controlled by § 1226(a) and not by § 1225(b)(2)(A).[2]

Accordingly, the Court finds that petitioner is being detained under 8 U.S.C. § 1226(a).  Because there is no evidence that petitioner has been provided a bond hearing, his current detention violates § 1226(a).  The Court will grant the habeas petition on Count I and order respondents to provide petitioner a bond hearing within seven days of the date of this order.[3]  *See Garcia Cortes v. Noem,* No. 25-cv-02677-CNS, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (ordering respondents to provide a bond hearing within seven days of the court's order granting the habeas petition); *Loa Caballero*, 2025 WL 2977650, at *1 (same); *Hernandez*, 2025 WL 2996643, at *8 (same).  The Court declines to order petitioner's release as a remedy because "§ 1226(a) does not require release – it provides DHS the discretion to grant an alien release on bond."  *Briales-Zuniga*, 2026 WL 35227, at *4.  Furthermore, an immigration judge is better suited to consider whether petitioner poses a flight risk or danger.[4]  *See id.*; *Loa Caballero*, 2025 WL 2977650, at *9.

---

[2] Respondents argue that petitioner was never admitted or paroled into the United States and that his release into his father's custody does not mean petitioner was admitted into the United States.  Docket No. 11 at 12-13.  Petitioner does not respond to this argument.  *See* Docket No 12.  The Court need not address this argument because petitioner never being admitted or paroled into the United States does not preclude the application of § 1226.  Section 1226 is a detention regime for noncitizens who are pending removal proceedings.  *See Hernandez*, 2025 WL 2996643, at *3.

[3] Because the Court will grant the habeas petition on the basis of Count I, it will not reach Count II, petitioner's due process claim.  See *Hernandez*, 2025 WL 2996643, at *8 ("the Court declines to adjudicate Petitioner's due process claim on the merits at this time because the Court grants the relief Petitioner seeks based on the applicability of § 1226(a)").

[4] As for petitioner's request for attorney's fees, *see* Docket No. 1 at 8, the Court will not consider the request because petitioner fails to comply with the Local Rules of

### III. CONCLUSION

Therefore, it is

**ORDERED** that Wilson Rene Garcia-Perez's Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**. It is further

**ORDERED** that respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a) within **seven days** of the date of this Court's order. It is further

**ORDERED** that within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED January 13, 2026.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

the District of Colorado. A motion for attorney fees must be filed in accordance with D.C.COLO.LCivR 54.3. See D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").